STATE OF VERMONT

ENVIRONMENTAL COURT

Appeal of Jarvis, et al.        }
}
}   Docket No. 153-9-01 Vtec
}
}

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellants appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Manchester, approving a proposal for a new building and additional parking at Hand Motors. Appellants are represented by Mary Ashcroft, Esq.; Cross-Appellants (Applicants) James Hand and John Hand, d/b/a Hand Motors, are represented by A. Jay Kenlan, Esq. and Marilyn Hand, Esq.; the Town of Manchester is represented by Robert E. Woolmington, Esq.; and Interested Persons Edward and Barbara Morrow represent themselves and their business Crossroads Associates. The represented parties have filed cross-motions for partial summary judgment on whether the proposed use can be classified as an 'essential service' as that term is used in the zoning ordinance.

The following facts are undisputed unless otherwise noted.

Applicants own and operate an existing automobile dealership on a parcel of land[1] located at and generally northwesterly of the intersection of Routes 11/30 and Route 7A. It is located in part in the Commercial-One (Commercial) zoning district and in part in the General Residential-One (Residential) zoning district. Their existing 17,000-square-foot building, located in the Commercial zoning district, is now used in part as a new car vehicle showroom with offices, in part as a 10-bay vehicle repair facility (with the parts department located on two floors), and in part as a 10-bay auto body shop. As presented to the ZBA it was proposed to be continued in use with additional ' vehicle repair bays,' with a portion of the former showroom space originally proposed to be converted to 2,700 square feet of an unspecified retail use. However, the ZBA ruled that this unspecified retail use did not fall within the use category of ' essential services' and Applicants did not appeal that ruling. Instead, they now propose to use the existing building for the body shop, increased to 20 bays, with its dedicated parts department.

Applicants propose to construct a new 21,000-square-foot building to the north of the existing building. They now propose to use it for a vehicle showroom and associated offices of the same size as the existing vehicle showroom, and for a vehicle repair and service department, also increased to 20 bays, with its dedicated parts department. In connection with the new construction Applicants also propose to extend the parking area 66 feet into the Residential zoning district, with this extended parking area to be used for the display of vehicles for sale.

Section 8.9.11 of the Zoning Ordinance provides additional standards for major development projects in the commercial zoning districts. It states four goals, the first of which is to encourage

the provision of smaller-scaled projects, with increased urban open space and avoiding higher density uses. In furtherance of these goals, subparagraph 1 under the heading " Performance Standards- Character of the Area Affected" provides more stringent building coverage and building size limitations than would otherwise apply. However, it also provides that the ZBA may make exceptions to these dimensional requirements, but only in the case of " essential services such as full service grocery stores, post offices, government buildings, hospitals and residential buildings." The zoning use category of "essential services" is not otherwise defined in the Zoning Ordinance.

Applicants argue that all three functions of their business: new and used vehicle sales, vehicle repair and service, and vehicle body shop work, should be considered as ' essential services' under this provision. They provide service and repairs for new and used vehicles, whether or not purchased from their dealership, and also provide warranty-related work on General Motors and Volkswagen vehicles. They provide emergency on-the-road services including towing. They are the only service facility approved for such warranty work between the towns of Bennington and Rutland, and serve customers in northern Bennington county, southern Rutland county, and from the adjacent areas of New York State.

Whenever a use category is defined by example, it is necessary to examine what are the common elements of the listed uses that distinguish the examples from other services that fall outside the category, and are therefore not considered to be essential. It is apparent from the listed examples, and particularly from the distinction made in the one business example of a full-service grocery store (presumably as opposed to the convenience store type of grocery store), that all of these services are essential because they furnish residents with the necessities of everyday living. The zoning ordinance provision represents a policy judgment on the part of the drafters of the Zoning Ordinance that, on the one hand, new large buildings are disfavored in the commercial districts, but that exceptions may be made for new large buildings that furnish the residents with the necessities of everyday living, such as residential housing, groceries, medical care, postal service, and governmental services (such as schools, police services, and fire protection.)

The fact that the Town Plan encourages the Town to ' create and maintain a business environment hospitable to locally-owned and -managed businesses,' and to those which ' provide the necessities and niceties of everyday living to residents' does not affect this interpretation. In carrying out the Town Plan, the Town is entitled to make rational distinctions in its zoning ordinance between businesses which provide the necessities of everyday living to residents, and businesses which provide non-essential amenities or ' niceties.' As provided in § 8.9.11(Performance Standards - Character of the Area Affected)(1), the zoning ordinance imposes additional requirements on all larger projects proposed for the commercial districts, but allows the ZBA to waive those requirements only in the case of uses that provide the necessities or essentials of everyday living to residents.

The fact that the Town Plan intends the commercial zoning districts to ' continue to be the Town' s primary business centers' and to ' provide a diversity of commercial, residential and service uses' does not affect this interpretation. It is simply not inconsistent with the goals as stated in the Town Plan for the Town also to impose certain density and building size limitations on new construction of large projects in the commercial districts.

We must then apply this understanding of the use category of ' essential services' in this particular zoning ordinance to the three functions of Applicants' business.

The question of whether the repair and servicing of motor vehicles is a necessity of everyday living for the residents of the Town of Manchester is a disputed question of material fact. While the evidence that it is such a necessity is strong, it is not undisputed and therefore will not support a ruling on summary judgment. However, if the affidavits presented on this issue are supported in the hearing on the merits, the Court would be prepared to rule that the use category of motor vehicle repair and service would fall within the category of an ' essential service' under § 8.9.11(Performance Standards - Character of the Area Affected)(1) of the Zoning Ordinance, and therefore that Applicants may proceed to request that the exception be applied to a new large building to house its motor vehicle repair functions and associated parts department.

On the other hand, it cannot seriously be argued that the purchase of a new or used vehicle is a necessity of everyday living, in the same way as is maintenance of that vehicle. If it were, then many retail stores (such as those selling kitchen appliances, or clothing) would fall within the exception, and the exception would promptly swallow up the special limitations for new large buildings in the commercial districts. While undisputed facts were not provided on this specific point, the purchase of an automobile as a necessity surely does not have to occur in the purchasers' lives on a daily or weekly or monthly basis, or even (as a necessity) on an annual basis. If evidence is provided at the hearing on the merits that purchases of new or used vehicles as a necessity generally occur on an annual or greater basis, the Court would be prepared to rule that the use category of new or used vehicle sales (and the associated showroom and offices) would not fall within the category of an ' essential service' under § 8.9.11(Performance Standards - Character of the Area Affected)(1) of the Zoning Ordinance.

The question of whether auto body work is a necessity of everyday living, as opposed to the servicing and repair of an automobile' s mechanical systems, is somewhat more difficult. Undisputed facts also were not provided on this specific point. If evidence is provided at the hearing on the merits that such work is cosmetic in nature and not necessary for the functioning of the vehicles, it could support a ruling that the use category of auto body work would not fall within the category of an ' essential service' under § 8.9.11(Performance Standards - Character of the Area Affected)(1) of the Zoning Ordinance. On the other hand, evidence that such work is related to the mechanical repair work discussed above and is necessary for the functioning of the vehicles could support a ruling that the use category of auto body work would fall within the category of an ' essential service' under § 8.9.11(Performance Standards - Character of the Area Affected)(1) of the Zoning Ordinance, on the same basis as vehicle repair and service.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the motions for partial summary judgment must be denied as material facts are in dispute. A telephone conference has already been scheduled for September 30, 2002, to discuss the implications of this ruling for the hearing on the merits of this matter already scheduled for October 16, 17, 18, 23 and 24, 2002. The parties should be prepared to discuss whether the disputed material facts discussed above should be presented and ruled on at the outset of that hearing and, if so, whether parties are able to prepare for the effective use of the successive hearing days.

Done at Barre, Vermont, this 16th day of September, 2002.

_____
Merideth Wright
Environmental Judge

Footnote

1. The size of the parcel for the proposed project is described as 6.1 acres in the ZBA decision (Stipulated Exhibit B) but as 6.6 acres in the site plan (Stipulated Exhibit C-1).